**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Standing Rock Housing Authority, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:08-cv-052 |
| United States Equal Employment | ) | |
| Opportunity Commission, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's "Motion to Dismiss the Complaint" filed on June 3, 2008. See Docket No. 8. The Plaintiff filed a response on June 13, 2008. See Docket No. 14. The Defendant filed a reply brief on June 19, 2008. See Docket No. 17. For the reasons set forth below, the Court grants the motion.

**I.    BACKGROUND**

In 2006, four females employed by the Standing Rock Housing Authority alleged that they had been sexually harassed by other employees and supervisors. See Docket No. 1-2. The four women filed sexual harassment complaints with the defendant, the Equal Employment Opportunity Commission (EEOC). See Docket No. 1-2. Pursuant to Title VII, 42 U.S.C. § 2000e et seq., the EEOC filed administrative charges of discrimination against the Standing Rock Housing Authority. See Docket No. 1-2. The Standing Rock Housing Authority filed a motion for summary judgment before the EEOC, contending that the EEOC lacked subject matter jurisdiction over the sexual harassment complaints and that the Standing Rock Housing Authority is not an "employer" as

defined in 42 U.S.C. § 2000e(b).  See Docket No. 1-5.  The EEOC has not ruled on the summary judgment motion.

On March 7, 2007, the EEOC issued an administrative subpoena in one of the four cases. See Docket No. 1-3.  The subpoena requested the Standing Rock Housing Authority to produce specific documents relating to the charges.[1]  An objection was filed to the subpoena.  See Docket No. 1-4.  On April 3, 2008, the EEOC issued a "Determination on Petition to Revoke Subpoena" and ordered the Standing Rock Housing Authority to comply with the subpoena within twenty days.  See Docket No. 1-6.  The deadline was extended by the parties to May 12, 2008.  See Docket No. 3.

On May 12, 2008, the Standing Rock Housing Authority filed a declaratory judgment action in federal court.  See Docket No. 1.  The Standing Rock Housing Authority contends that there is an actual controversy as to whether it is obligated to comply with the EEOC's subpoena and whether the EEOC has jurisdiction over the Standing Rock Housing Authority.

On May 13, 2008, the Standing Rock Housing Authority filed a "Motion for Temporary Restraining Order and Preliminary Injunction."  See Docket No. 3.  On May 21, 2008, the parties filed a stipulated motion in which the EEOC agreed not to file an administrative or judicial subpoena enforcement action in this matter before either July 21, 2008, or when the Court rules on the Standing Rock Housing Authority's motion for preliminary injunction, whichever occurred first. See Docket No. 5.  The parties agreed to a briefing schedule regarding the motion for preliminary

---

[1]Specifically, the EEOC sought a list of the sources of funding for the Standing Rock Housing Authority; documents explaining how the Standing Rock Housing Authority was formed, funded, and directed/managed; names and titles of managerial and supervisory employees; a list of government agencies that the Standing Rock Housing Authority is connected to by contract; contracts the Standing Rock Housing Authority has with government agencies; and an explanation of all connections the Standing Rock Housing Authority has with government agencies.

injunction.  See Docket No. 5.  The Court adopted the parties' stipulation on May 22, 2008.  See Docket No. 6.

On June 3, 2008, the EEOC filed a response to the Standing Rock Housing Authority's motion for preliminary injunction and filed a motion to dismiss the complaint pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.  See Docket Nos. 8, 11.  On June 13, 2008, the Standing Rock Housing Authority filed a "Motion to Withdraw Motion for Preliminary Injunction."  See Docket No. 12.  The Court granted the motion to withdraw on June 17, 2008.  See Docket No. 16.  The Standing Rock Housing Authority filed a response in opposition to the motion to dismiss on June 13, 2008.  See Docket No. 14.  The EEOC filed a reply brief on June 19, 2008.  See Docket No. 17.

The EEOC moves to dismiss the Standing Rock Housing Authority's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  The EEOC essentially contends that the complaint should be dismissed with prejudice under Rule 12(b)(1) because the case is not ripe for review.

## II. OVERVIEW OF TITLE VII

Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to eliminate employment practices that discriminate on the basis of race, color, religion, sex, or national origin.  Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974).  In Title VII, Congress created an elaborate administrative procedure, implemented through the EEOC, that is designed to resolve employment discrimination disputes through conference, conciliation, and persuasion rather than litigation.  Duncan v. Delta Consol. Industries, Inc., 371 F.3d 1020, 1024 (8th Cir. 2004).

However, Title VII limits the power of the EEOC – the EEOC <u>cannot adjudicate claims or impose administrative sanctions</u>. <u>Alexander</u>, 415 U.S. at 44. Instead, federal courts are vested with the authority to enforce Title VII.

Title VII sets forth the authority of the EEOC to file discriminatory charges, investigate claims of discrimination, and initiate conciliation procedures against an "employer."[2] When a charge is filed by a member of the EEOC or an aggrieved person, the EEOC shall serve the charge on the employer within ten days and shall investigate the matter. <u>See</u> 42 U.S.C. § 2000e-5(b). The charge shall include the date, the location, and the circumstances of the alleged wrongful employment practice. For purposes of investigating the charge, "the [EEOC] or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . ." 42 U.S.C. § 2000e-8(a). Section 2000e-8 mandates that every employer subject to the subchapter shall: (1) make and keep such records that are relevant to the issue of whether unlawful employment practices have occurred; (2) preserve the records for the period of investigation; and (3) make reports in accordance with the regulations or orders of the EEOC. <u>See</u> 42 U.S.C. § 2000e-8(c). If, after such investigation, the EEOC finds that reasonable cause does not exist as to the charge, then it shall dismiss the charges and promptly notify the employer and the alleged aggrieved person of the dismissal. <u>See</u> 42 U.S.C. § 2000e-5(b). However, if the EEOC finds reasonable cause to believe that the charge is true, "the [EEOC] shall endeavor

---

[2] Pursuant to 42 U.S.C. § 2000e(b), an "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day . . . and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia . . . , or (2) a bona fide private membership club . . . ."

4

to eliminate any such alleged unlawful employment practice by <u>informal methods of conference, conciliation, and persuasion</u>." <u>See</u> 42 U.S.C. § 2000e-5(b) (emphasis added). The EEOC shall make its determination on reasonable cause promptly, but no more than one hundred and twenty days from the filing of the charge, or from the date upon which the EEOC is authorized to act. <u>See</u> 42 U.S.C. § 2000e-5(b). If conciliation efforts fail, the EEOC may bring a civil action against the employer in federal district court. <u>See</u> 42 U.S.C. § 2000e-5(f)(1).

### III.    STANDARD OF REVIEW

The motion to dismiss is resolved by analyzing Rule 12(b)(1) of the Federal Rules of Civil Procedure. Therefore, the Court will not address the EEOC's motion to dismiss for failure to state a claim under Rule 12(b)(6).

It is well-established that "a district court 'has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1).'" <u>Harris v. P.A.M. Transp., Inc.</u>, 339 F.3d 635, 637 n.4 (8th Cir. 2003) (quoting <u>Osborn v. United States</u>, 918 F.2d 724, 728 n.4 (8th Cir. 1990) (citing <u>Land v. Dollar</u>, 330 U.S. 731, 735 n.4 (1947))). Unlike a motion to dismiss under 12(b)(6), to look at matters outside the pleadings does not convert a Rule 12(b)(1) motion to a motion for summary judgment. <u>Id.</u> The Eighth Circuit has explained that the difference between the two rules "is rooted in the unique nature of the jurisdictional question." <u>Osborn</u>, 918 F.2d at 729 (quoting <u>Williamson v. Tucker</u>, 645 F.2d 404, 413 (5th Cir. 1981)). "[A] district court has 'broader power to decide its own right to hear the case than it has when the merits of the case are reached.'" <u>Id.</u> Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide.

The standard for a district court to employ in ruling on a motion to dismiss is well-established. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). "A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." Id. (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996)). "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" McCormack v. Citibank, N.A., 979 F.2d 643, 646 (8th Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.'" Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Frey v. Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (quoting Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974))).

**IV.   LEGAL DISCUSSION**

The EEOC argues that the complaint should be dismissed for lack of subject matter jurisdiction because the case is not ripe for judicial review. Specifically, the EEOC contends that the case lacks ripeness because the issuance of an administrative subpoena by the EEOC is not a final agency action under Title VII.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision

has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-08 (2003). The ripeness doctrine is rooted in both the "jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." Pub. Water Supply Dist. No. 8 of Clay County, Missouri v. City of Kearney, Missouri, 401 F.3d 930, 932 (8th Cir. 2005). Article III limits the jurisdiction of federal courts to deciding "cases" and "controversies." Mausolf v. Babbitt, 85 F.3d 1295, 1300 (8th Cir. 1996). In determining whether the case is ripe for judicial review, the Court must evaluate: (1) the fitness of the issues for judicial determination, and (2) the hardship to the parties of withholding court consideration. KCCP Trust v. City of N. Kansas City, 432 F.3d 897, 899 (8th Cir. 2005) (citing Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967)).

### 1. FITNESS

The fitness prong examines the finality of the agency action. See Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 162-63 (1967). Under the Administrative Procedure Act (APA), a federal court can only review "final" agency actions. See 5 U.S.C. § 704. The APA provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

Id. (emphasis added). A final agency action within the meaning of the APA is "the 'consummation' of the agency's decisionmaking process . . . by which 'rights or obligations have been determined,'

7

or from which 'legal consequences will flow.'" Bennett v. Spear, 520 U.S. 154, 177-78 (1997). An agency report that serves as a tentative recommendation, rather than serving as a final and binding determination, is not a final agency action. See Sierra Club v. United States Army Corps of Engineers, 446 F.3d 808, 813 (8th Cir. 2006) (fining that a memorandum which permitted levees to be built but did not obligate construction of the levees was not a final agency action because it did not determine the substantive rights and obligations of the parties). "But if the agency has issued 'a definitive statement of its position, determining the rights and obligations of the parties,' that action is final for purposes of judicial review despite the 'possibility of further proceedings in the agency' to resolve subsidiary issues." Id. (quoting Bell v. New Jersey, 461 U.S. 773, 779-80 (1983)).

The Eleventh Circuit Court of Appeals in Mississippi Chem. Corp. v. Equal Employment Opportunity Comm'n, 786 F.2d 1013 (11th Cir. 1986), considered whether the EEOC's issuance of an administrative subpoena was a final agency action. The EEOC filed a charge against Mississippi Chemical Corporation alleging discriminatory hiring practices against women and minorities. Mississippi Chemical brought an action in federal district court to obtain an injunction against the EEOC. The district court denied injunctive relief but permitted Mississippi Chemical to reapply for relief after the EEOC issued an administrative subpoena. The EEOC issued the subpoena and Mississippi Chemical refused to comply. The EEOC gave Mississippi Chemical ten days to comply, and indicated that it would seek to enforce the subpoena if Mississippi Chemical failed to comply. Before the EEOC sought enforcement of the subpoena, Mississippi Chemical once again brought suit in federal district court, but this time Mississippi Chemical sought a declaratory judgment that the charge was invalid. The district court denied relief on the basis that the issue was not ripe

because the issuance of the administrative subpoena, without judicial enforcement, was not a final agency action.

On appeal, Mississippi Chemical argued that the issuance of the administrative subpoena was a final agency action. To support this contention, Mississippi Chemical indicated that the issuance of the subpoena burdened it by: (1) forcing Mississippi Chemical to retain voluminous records which potentially related to the charge; (2) forcing Mississippi Chemical into "quasi-contempt" if it failed to produce the records; and (3) inflicting a negative stigma about Mississippi Chemical's hiring practices. See 786 F.2d 1013, 1018. The Eleventh Circuit found these arguments meritless because any government investigation creates burdens and such burdens are a function of the law created by Title VII. The Eleventh Circuit noted that, independent of the charge, Title VII requires an employer to retain all personnel records for six months after they are created and, therefore, the additional burden of retaining records after a charge of discrimination has been filed is of little significance. Id. (citing 29 C.F.R. § 1602.14 ("Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA [Americans with Disabilities Act], the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.")). Second, the court noted that Mississippi Chemical would not be in contempt for disobeying the subpoena because an employer has a right to oppose a subpoena enforcement action. Third, an EEOC investigation is not a hindrance to hiring women or minorities. As a result, the Eleventh Circuit found that the EEOC had not engaged in final agency action by issuing a charge of discrimination and a subpoena against Mississippi Chemical. See id. at 1019.

Likewise, in Georator Corp. v. Equal Employment Opportunity Comm'n, 592 F.2d 765, 768 (4th Cir. 1979), the Fourth Circuit Court of Appeals held that the EEOC's issuance of an administrative subpoena and finding of reasonable cause failed to constitute final agency action. The Fourth Circuit noted that finality is tantamount to "the fixing of obligations or legal relationships." Id.

> No such finality exists with respect to the EEOC's [determination].  Standing alone, it is lifeless and can fix no obligation nor impose any liability on the plaintiff.  It is merely preparatory to further proceedings.  If and when the EEOC or the charging party files suit in district court, the issue of discrimination will come to life, and the plaintiff will have the opportunity to refute the charges.

Id.  Other circuits have affirmed this stance.  See Borg-Warner Protective Services Corp. v. Equal Employment Opportunity Comm'n, 245 F.3d 831, 835-36 (D.C. Cir. 2001); Ward v. Equal Employment Opportunity Comm'n, 719 F.2d 311, 313-14 (9th Cir. 1983); Francis v. Accardo, 602 So. 2d 1066, 1069 (La. Ct. App. 1992).

In the present case, the EEOC issued an administrative subpoena on March 7, 2007, which requested the Standing Rock Housing Authority to produce specific documents relating to its formation, purpose, and funding.  See Docket No. 1-3.  Congress has established the EEOC as the administrative body to investigate allegations of discrimination, and has given the EEOC the power to determine whether a party is covered under Title VII.  See Equal Employment Opportunity Comm'n v. Peat, Marwick, Mitchell and Co., 775 F.2d 928, 930 (8th Cir. 1985) (stating that the initial determination of coverage under the statute is left to the administrative agency, and generally the issue cannot be resolved until the administrative agency has had an opportunity to review the subpoenaed documents).  Pursuant to its authority under Title VII, the EEOC may issue subpoenas requiring the production of evidence for investigatory purposes.  See 42 U.S.C. § 2000e-9.

Therefore, the Court finds that the EEOC was acting pursuant to its authority under Title VII when it issued an administrative subpoena to the Standing Rock Housing Authority to investigate whether the Standing Rock Housing Authority is covered under Title VII.

The EEOC's issuance of the subpoena was not a final agency action. As stated in Bennett, a final agency action is action in which rights or obligations have been determined or from which legal consequences will flow. 520 U.S. at 177-78. The mere issuance of an administrative subpoena fixes no obligations nor imposes any legal liability on the Standing Rock Housing Authority. See Georator Corp., 592 F.2d at 768. If the Standing Rock Housing Authority refuses to provide the documents requested in the subpoena, the EEOC is powerless on its own to enforce the subpoena. For the subpoena to have any legal effect, the EEOC must seek judicial enforcement of the subpoena. See Alexander, 415 U.S. 36, 44; Georator Corp., 592 F.2d 765, 768.

In the present case, the EEOC is still investigating whether the Standing Rock Housing Authority is an "employer" under Title VII. See Docket No. 10. Because the EEOC is still in the investigatory stages of the proceedings and has not sought judicial enforcement of the subpoena, the EEOC has fixed no obligations nor imposed a legal relationship upon the Standing Rock Housing Authority. As a result, the EEOC has not engaged in action which is considered to be a "final" agency action. To hold otherwise would result in this Court judicially interfering with the proper functions of the EEOC, and delaying resolution of the ultimate question of whether Title VII was violated. Accordingly, the Court finds that the case is not fit for judicial review.

### 2.    HARDSHIP

Even though the Court has determined that the case is not fit for judicial review, the Court will briefly address the hardship to the parties of withholding court consideration.  The Standing Rock Housing Authority argues that this case is ripe for review because the EEOC's investigatory process has imposed hardships on the Standing Rock Housing Authority, including harm to its sovereignty as an Indian tribe.  The Court finds this argument unpersuasive.  The statutory framework of Title VII makes it clear that the EEOC is authorized to investigate charges of employment discrimination to determine whether reasonable cause exists.  See 42 U.S.C. § 2000e-5(b).  Paramount to this determination is whether the EEOC has jurisdiction over the Standing Rock Housing Authority.  If, after investigating the matter, the EEOC determines that the Standing Rock Housing Authority is not an "employer" under Title VII, the EEOC must promptly notify the Standing Rock Housing Authority of this finding and cease any further investigation of the alleged discrimination.  Further, federal statutory law requires an employer to preserve all personnel records relating to the charge until the final disposition of the charge.  See 29 C.F.R. § 1602.14; see also Mississippi Chem. Corp., 786 F.2d 1013, 1018.  Therefore, any hardship incurred by the Standing Rock Housing Authority for the EEOC's mere issuance of an administrative subpoena and investigation of the alleged discrimination is minimal.

### V.    CONCLUSION

The Court finds that the case should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Congress granted the EEOC the broad authority to investigate claims of workplace discrimination and the right to make an initial determination of coverage under Title VII.

The EEOC is presently conducting an investigation into whether the Standing Rock Housing Authority is deemed to be an "employer," and the EEOC has a right to conduct such an investigation under Title VII.  Therefore, the Court lacks subject matter jurisdiction because the case is not ripe for judicial review.  The proceeding is not ripe for judicial review because it is an anticipatory action to challenge the validity of the EEOC's administrative subpoena before the agency has sought judicial enforcement of the subpoena.  For the reasons set forth above, the Defendant's motion to dismiss (Docket No. 8) is **GRANTED**.  The Plaintiff's motion for a temporary restraining order and hearing (Docket No. 3) is **DENIED** as moot.

    **IT IS SO ORDERED**.

    Dated this 10th day of November, 2008.

    */s/  Daniel L. Hovland*
    Daniel L. Hovland, Chief Judge
    United States District Court